UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FELIX L. SORKIN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-04-4182 |
| | § | |
| AMSYSCO, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this patent infringement case are Defendant Amsysco, Inc.'s ("Amsysco") motion for summary judgment and objections to the declaration and expert report of David Trejo, which is offered in support of Plaintiff Felix Sorkin's ("Sorkin") response to the motion. After reviewing the parties' filings and the applicable law, the Court finds that the objections, Docket No. 105, are justified and, therefore, that Dr. Trejo's report is inadmissible as summary judgment evidence. The Court further finds that the motion for summary judgment, Docket No. 100, should be and hereby is **GRANTED**.

I.   BACKGROUND

Amsysco is an Illinois corporation that sells post-tensioning products to building contractors. Post-tensioning systems strengthen concrete structures by incorporating tensioned metal tendons into those structures. A cap containing grease, which acts as a rust inhibitor, fits over the end of each tendon at the anchoring point. In 1995, Sorkin was issued a patent – U.S. Patent No. 5,440,842 (the "Sorkin patent") – for a cap containing a membrane holding the grease in place inside the cap, to prevent leakage during shipment. Sorkin now contends that Amsysco has infringed the patent by selling a

product that meets each limitation of claims 1, 9, and 12 of the patent, which read as follows:

> **Claim 1**
> An apparatus for sealing an anchor retaining a tendon, whereby an end of said tendon extends from said anchor, comprising:
> > a vessel member having a void and an exterior outer edge along the perimeter of said vessel member;
> > a rust inhibitor disposed within said void; and
> > a retaining member permanently affixed around said exterior outer edge of said vessel member, whereby said retaining member is punched by said tendon end upon placing said vessel in sealed communication with said anchor.
>
> **Claim 9**
> An apparatus for sealing an anchor retaining a tendon, whereby an end of said tendon extends from said anchor, comprising:
> > a vessel member having a void and an outermost exterior outer ridge which is mateable with said anchor;
> > a rust inhibitor disposed within said void; and
> > a polyethylene film retaining member permanently affixed along said outer ridge of said vessel member, whereby said retaining member is punctured by said tendon end upon mating said vessel to said anchor.
>
> **Claim 12**
> An apparatus for anchoring a tendon in concrete, comprising:
> > an anchor having a first opening for receiving an end of a tendon and a second opening communicating with said first opening and for permitting said tendon to extend outward from said anchor; and
> > at least one wedge for retaining said tendon end in affixed position with respect to said anchor; and
> > an apparatus for sealing said second opening of said anchor, comprising:
> > > a vessel member having a void and an exterior outer edge along the perimeter of said vessel member;
> > > a rust inhibitor disposed within said void; and
> > > a retaining member permanently affixed around said exterior outer edge of said vessel member, whereby said retaining member is punctured by said tendon end upon placing said vessel in sealed communication with said anchor.

The Court held a claim construction hearing on February 24, 2006, to determine the correct definitions of disputed terms contained in claims 1, 9, and 12 of the Sorkin patent. On February 27, 2006, the Court issued a Memorandum and Order (Docket No. 89), construing those terms as follows:

| Disputed Term | Construction |
| --- | --- |
| "exterior outer edge" (claims 1 and 12) | "the portion of the sealing cap that is adjacent to but outside of the vessel member" |
| "outermost exterior outer ridge" (claim 9) | "the portion of the sealing cap that is adjacent to but furthest outside of the void, or 'vessel member'" |
| "permanently affixed" (claims 1, 9, and 12) | "secured and remaining without essential change, until the cap is inserted in place into an anchor" |

Shorn of technical language, Sorkin's invention consists of a hollow cap that contains grease, which is held in place by a thin film attached to the top of the cap. When the end of a metal tendon is inserted into the hollow space in the cap, it punctures the film, allowing the grease to coat the tendon and thereby prevent it from rusting. Amsysco's product is a very similar cap; the only discernible difference between the two is that the void in the Amsysco cap widens abruptly but very slightly just below the top, forming a small ledge to which the retaining film is attached. Sorkin contends that this difference between the two caps is insufficient to defeat a finding of infringement, either literal or under the doctrine of equivalents. Amsysco now moves for summary judgment on all of Sorkin's claims.

## II.     ANALYSIS

### A.     Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 4777 U.S. 317, 322 (1986) (internal quotation marks omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Id.* at 255.

### B.     Amsysco's Objections to Dr. Trejo's Report

In support of his response to Amsysco's motion for summary judgment, Sorkin has submitted the declaration of David Trejo, Ph.D., P.E. (Docket No. 103).  Amsysco objects to the declaration on the grounds that it contains legal conclusions and that it does not satisfy the standards for scientific evidence established by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

With regard to the former concern, the Court agrees with Amsysco that the declaration is peppered throughout with statements expressing Dr. Trejo's opinion that the Amsysco cap infringes Sorkin's patent, both literally and under the doctrine of equivalents.  While FED. R. EVID. 704(a) permits experts to express otherwise admissible

opinions concerning an ultimate issue to be decided by a court, the rule "does not allow a witness to give legal conclusions." *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999). Trejo's statements regarding infringement are, therefore, inadmissible.

Amsysco is also correct in pointing out that Dr. Trejo's declaration does not satisfy the *Daubert* standard for expert opinion testimony. *Daubert* requires the Court to consider, in deciding the admissibility of such testimony, whether an expert's theory or technique (1) has been tested in accordance with the scientific method; (2) has been subjected to peer review and publication; (3) has a reasonable known or potential rate of error; and/or (4) is generally accepted in the relevant field. 509 U.S. at 593-95. These four factors are not exclusive but, rather, should guide the "flexible" inquiry envisioned by FED. R. EVID. 702. *Daubert*, 509 U.S. at 594.

Dr. Trejo's declaration self-evidently fails the *Daubert* test. Not once does it cite any source for the theories and factual assertions that it contains. While the Court does not doubt that Dr. Trejo is a highly skilled engineer, *Daubert* simply does not permit the Court to accept expert opinion testimony that is not supported by evidence of scientific research and testing. Nowhere in the declaration does Dr. Trejo specify what information or literature, apart from the caps themselves, was used in forming his opinions. (*See id.* at 12 ["Information also included general literature on post-tensioning systems and other information related to the issues in dispute here."]; *id.* at 21 ["Information also included general literature on post-tensioning systems and other pertinent information."].) Nor does he explain how he developed his methods of analyzing the caps or the patent claims.

Moreover, it is clear from his declaration that Dr. Trejo did not, in fact, perform any scientific testing on the caps that he examined. (*See, e.g.*, Trejo Decl. at 9

("Inspection of the defendant's caps (provided by the plaintiff's counsel) indicates that a rust inhibitor is present in the cap void. It should be noted that no testing or analysis was performed on this material."); *id.* ("[I]f the Defendant's product contains polyethylene, this is clearly a literal infringement of the patent. However, testing is likely needed to determine this and is recommended."); *id.* at 11-12 ("The defendant's cap does contain a material that apparently is a rust inhibitor (material was not evaluated). If this is in fact the case, the defendant's cap system literally infringes the second part of the third term in Claim 12."); *id.* at 17 ("As already noted, both cap systems contain a grease-like material (believed to be a rust inhibitor) in their voids with the purpose of preventing corrosion of the tendon.").) Dr. Trejo's credibility is further undermined by his expression, despite his failure to determine what the substance inside the caps actually is, of the opinion that "the material in the void of the Defendant's cap performs an equivalent function as described in the '842 patent, here specifically in Claim 12." (*Id.* at 20.)

Finally, Dr. Trejo makes many bald assumptions regarding the caps' functions and purposes. (*See, e.g.*, *id.* at 14 ("Visual observations of the Defendant's cap and the patented cap require careful examination to distinguish any differences and use and performance of the Defendant's cap system, based on observations and connecting these caps, is similar, if not exactly the same as the patented cap."); *id.* at 15 ("Both cap systems contain a grease-like material in their voids with the purpose of preventing corrosion of the tendon. Clearly the material in the voids of the cap systems is placed in the void to perform equivalent functions."); *id.* at 19 ("The Defendant's product is clearly for sealing the opening of an anchor.").) For all of the aforementioned reasons, Dr.

Trejo's report does not constitute adequate summary judgment evidence, and the Court therefore declines to consider it in deciding Amsysco's motion.

### C.   Literal Infringement

"Infringement, both literal and under the doctrine of equivalents, is an issue of fact." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). The Court uses a two-step process to evaluate a claim of literal infringement, first construing the claims as a matter of law and then determining "whether the claims as thus construed read on the accused product." *Id.*  "To establish literal infringement, every limitation set forth in a claim must be found in an accused device, exactly." *Id.*

Amsysco's product does not literally infringe Sorkin's patent. All three claims asserted by Sorkin require the retaining member – the film holding the rust inhibitor in place inside the cap – to be affixed to the "exterior outer edge" or "outermost exterior outer ridge" of the vessel member (the void). The Court has construed that edge or ridge as being located completely outside of the void – that is, at or above the plane defined by the surface adjacent to the void. (*See* Memorandum and Order dated February 27, 2006 (Docket No. 89).) The parties do not dispute that the film used in the Amsysco cap is attached to a small ledge just below this plane – that is, inside of the void.

Sorkin protests that the film is only a tiny distance inside the cap, not "well within" it or in its "deep recesses," as was the retaining member in the prior art from which Sorkin successfully distinguished his invention during the patent prosecution. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4, 9.) He argues that the ledge used in the Amsysco cap is akin to a beveled door frame, which "does not make the beveled side 'interior' to the house." (*Id.* at 9.)

While Sorkin's analogy is superficially appealing, the Federal Circuit has clearly and repeatedly held that,

> [a]lthough words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

As the Court determined during the claim construction phase of this case, the prosecution history demonstrates that Sorkin defeated the patent examiner's initial finding of anticipation by defining "exterior outer edge" and "outermost exterior outer ridge" in such a way that, were Sorkin's cap a house, a beveled portion of a door frame would, in fact, be located inside of the house.  (*See* Memorandum and Order dated February 27, 2006 (Docket No. 89); Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1 (prosecution history), at 3, 83.)  It is immaterial to a determination whether an object is inside or outside of another object to ask *how deeply* inside it is.

Indeed, Sorkin has essentially conceded the literal infringement issue by quibbling over depth.  The prior art contained a retaining member located eight millimeters inside of the cap.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4 & Ex. 11.)  Amsysco's retaining member is one twentieth of an inch (that is, about one and one-quarter millimeters) inside of the cap.  (*Id.* at 4.)  The Court cannot conceive of any non-arbitrary line that can be drawn between the two, rendering the first membrane "outside" and the second "inside" of their respective caps.  How would Sorkin characterize a retaining member placed one and one-half millimeters inside of the cap?  Three millimeters?  One suspects that Sorkin would prefer to use a sliding scale that favors a

finding of infringement at any depth of fewer than eight millimeters. This the Court cannot do. Accordingly, summary judgment is hereby **GRANTED** for Amsysco on Sorkin's claim of literal infringement of Claims 1, 9, and 12 of the Sorkin patent.

### D. Infringement Under the Doctrine of Equivalents

A product may infringe a patent without literally reading on every one of the patent's claims. This is so because, as the Supreme Court has stated:

> The language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty. If patents were always interpreted by their literal terms, their value would be greatly diminished. Unimportant and insubstantial substitutes for certain elements could defeat the patent, and its value to inventors could be destroyed by simple acts of copying. For this reason, the clearest rule of patent interpretation, literalism, may conserve judicial resources but is not necessarily the most efficient rule. The scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731-32 (2002).

"Infringement *may* be found under the doctrine of equivalents if an accused product 'performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention.'" *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) (emphasis in original), *overruled in part on other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993). "Even if this test is met, however, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Id.*

Sorkin's claim under the doctrine of equivalents fails for the same reason that Amsysco is entitled to summary judgment on his literal infringement claim – namely, that Sorkin himself insisted, during the prosecution history, that his product was meaningfully

different from the prior art in that its retaining member was located *outside* of the vessel member. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1, at 83.) As Sorkin so adamantly maintains, the only difference between his cap and Amsysco's is the location of the film. In other words, it is the same difference that allowed Sorkin to patent his cap despite the existence of the prior art.

Sorkin cannot defend his patent by pointing to this difference and, at the same time, dismiss the importance of the difference in the infringement context. He may not, that is, use the claim terms, limited as they are by the prosecution history, as both shield and sword. Accordingly, summary judgment is hereby **GRANTED** for Amsysco on Sorkin's infringement claim under the doctrine of equivalents.

### III.  CONCLUSION

The summary judgment evidence, viewed in the light most favorable to Sorkin, establishes that Amsysco's product does not infringe Sorkin's patent, either literally or under the doctrine of equivalents. Summary judgment is therefore **GRANTED** for Amsysco on all of Sorkin's claims.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 12th day of June, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**